1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
2

3


4    HERNAN MATAMOROS, SHARON SAM        )
     CHAN, and KATE PETERSEN, on         )
5    behalf of themselves and all        )
     others similarly situated,          )
6                        Plaintiffs,     )  CA No. 08-10772-NMG
                                         )
7                                        )
                                         )
     vs.                                 )
8                                        )
                                         )
9    STARBUCKS CORPORATION,              )
                        Defendant.       )
10


11

     BEFORE:  THE HONORABLE NATHANIEL M. GORTON
12


13
                       FINAL PRETRIAL CONFERENCE
14

15

16

            John Joseph Moakley United States Courthouse
17                       Courtroom No. 4
                        One Courthouse Way
18                      Boston, MA 02210
                     Thursday, January 12, 2012
19                       11:15 a.m.

20

21

22                 Cheryl Dahlstrom, RMR, CRR
                      Official Court Reporter
23          John Joseph Moakley United States Courthouse
               One Courthouse Way, Room 3209
24                    Boston, MA 02210
            Mechanical Steno - Transcript by Computer

25

1    APPEARANCES:

2        LICHTEN & LISS-RIORDAN, P.C.
         By:  Shannon E. Liss-Riordan, Esq.,
3             Hillary A. Schwab, Esq.,
              Brant Casavant, Esq., and
4             Claret M. Vargas, Esq.
         100 Cambridge Street
5        Boston, Massachusetts 02114
         On behalf of the Plaintiffs.
6
         AKIN, GUMP, STRAUSS, HAUER & FELD LLP
7        By:  Daniel L. Nash, Esq.,
              Nathan J. Oleson, Esq., and
8             Kelly M. Scindian, Esq.
         1333 New Hampshire Avenue N.W.
9        Washington, D.C. 20036
         - and -
10       AKIN, GUMP, STRAUSS, HAUER & FELD LLP
         By:  Gregory W. Knopp, Esq.
11       2029 Century Park East
         Los Angeles, California 90067
12       On behalf of the Defendant.

13

14

15

16

17

18

19

20

21

22

23

24

25

1               P R O C E E D I N G S

2          THE CLERK:  This is Civil Action No. 08-10772,

3     Matamoros et al vs. Starbucks Corporation.  Will counsel please

4     identify themselves for the record.

5          MS. LISS-RIORDAN:  Good morning, your Honor.  For the

6     plaintiffs, Shannon Liss-Riordan.  And with me are Hillary

7     Schwab, Brant Casavant, and Claret M. Vargas.

8          THE COURT:  Good morning, Miss Liss-Riordan.  You

9     don't have to worry about that microphone.  I think we can deal

11:14 10   without it.

11          It's Mr. -- rather, Miss Schwab at the front table,

12     Mr. Casavant and Miss Vargas behind.  Okay.

13          MR. KNOPP:  Good morning, your Honor.  Greg Knopp for

14     Starbucks.  With me is Daniel Nash, Nathan Oleson, and Kelly

15     Scindian.

16          THE COURT:  All right.  Is it Mr. Knopp or K-nopp?

17          MR. KNOPP:  Knopp, silent K.

18          THE COURT:  Mr. Nash, Mr. Oleson, Miss Scindian, is

19     that correct?

11:15 20        MS. SCINDIAN:  Correct.

21          THE COURT:  Good morning, counsel.  We are here on a

22     final pretrial conference in this matter which is due to go to

23     trial next Monday morning.  Before we start, I think I am going

24     to announce my rulings on the pending motions for summary

25     judgment and the in limine motions in hopes that that will

1    inform the situation and make it clear where this Court is

2    coming from, and then I will hear from counsel.

3           As we are aware, the plaintiffs filed last night a

4    motion to refer this matter to a Special Master under Rule 53.

5    Of course, the defendants have not had a chance to respond to

6    that.  I'm going to give them that opportunity.  And I will

7    expound on where I think that might leave us.

8           But to start, plaintiffs have filed a motion for

9    summary judgment on compensatory damages, No. 84.  That motion

11:16 10   is denied.  The parties' dispute over the total amount of

11   damages and how best to calculate them is a question of fact

12   for the jury, not a question of law for the Court to decide.

13          Defendant's motion for summary judgment on treble

14   damages, Docket No. 74, is allowed in part and denied in part.

15   Damages for violations of the Massachusetts Tips Law occurring

16   before July 12, 2008, will not be trebled.  The decision to

17   award treble damages is within this Court's discretion, and

18   this Court has determined that the defendant's conduct was not

19   outrageous enough to warrant treble damages.

11:17 20         Secondly, damages for violations of the Massachusetts

21   Tips Law occurring on or after July 12, 2008, will be trebled

22   pursuant to the mandatory trebling amendment to the statute.

23   The current version of that statute is not unconstitutional,

24   and class representatives have standing to pursue those damages

25   on behalf of the class; and to the extent they don't, I will

1    allow the plaintiffs to add another class representative.

2         Plaintiffs' motion in limine to preclude relitigation

3    of matters decided as a matter of law by this Court, Docket No.

4    94, is allowed.  This Court has already granted summary

5    judgment in favor of the plaintiffs that the Massachusetts Tips

6    Law does not permit shift supervisors to receive any tips

7    whether they deserve them or not.  This trial will be about

8    calculating damages only and will not be about the fairness or

9    lack thereof of Starbucks' tips policy.

11:18 10        Fourth, defendant's motion in limine to exclude

11   testimony of witnesses not disclosed during discovery, Docket

12   No. 97, is denied with the caveat that the testimony to be

13   submitted at this trial on the opposing methods of calculating

14   damages will be substantially circumscribed and subject to

15   strict time limits.

16        In fact, this trial is going to be completed in three

17   or four days next week.  Each side will have five hours to

18   present their case and to oppose the -- or to cross-examine the

19   witnesses on the other case.  That means there will be maybe

11:19 20   two or two and a half days of testimony.  That is sufficient,

21   in this Court's judgment, to present the evidence of what the

22   appropriate method of determining damages is and to allow the

23   jury to decide deemed, based upon what method they choose, what

24   appropriate damages will be awarded.

25        Fifth, defendant's motion in limine to exclude

1     evidence of parties' relative financial conditions, Docket No.

2     99, is allowed.  That is, we're not going to get into

3     Starbucks' net worth unless Starbucks opens the door in some

4     way that I don't anticipate will be opened.

5          Sixth, defendant's motion in limine to exclude

6     plaintiffs' exhibit and testimony on damages, Docket No. 100,

7     is denied.  That is, the tips' records, while hearsay, are

8     admissible because they fall within the business records

9     exception and the admission of a party opponent hearsay

11:20 10    exception.  Those records may be authenticated at trial as long

11    as plaintiffs can show that the records are, as the plaintiffs

12    claim, tips' records from Starbucks' stores during the class

13    period.  As long as a proper foundation is laid, the

14    plaintiffs' summary exhibit will be deemed admissible under

15    Federal Rule of Evidence 1006 because the underlying records

16    are admissible.  Those records are voluminous, and the

17    plaintiff is entitled to demonstrate, if they can, that this is

18    a fair reflection of those records.

19         Finally, Mr. Ossoff, the plaintiffs' witness, will be

11:21 20    allowed, pursuant to Rules 901 and 1006, to authenticate the

21    summary exhibit and to testify as a summary witness about the

22    calculations contained in that exhibit.

23         I, as I said, have received the plaintiffs' motion

24    just as I arrived this morning to hold damages assessment

25    hearing or appoint a Special Master in lieu of jury trial on

1  damages.  The defendants have not had a chance to respond to

2  that.  Do they wish to do so at this point?  Mr. Knopp?

3         MR. KNOPP:  Yes, your Honor.  Thank you.  First off,

4  we think the motion is improper under the Court's scheduling

5  order and because it ought to be brought, if at all, by notice

6  motion, to which our response is due, I believe, two weeks from

7  today.

8         But regardless of that, we view the motion as really a

9  summary judgment motion in disguise.  The plaintiffs are asking

11:22 10  the Court that damages be decided without a jury trial.  That

11  is what a summary judgment is for.  They did bring such a

12  motion and it was denied.  We have -- Starbucks has a right

13  under the Seventh Amendment to the U.S. Constitution to a jury

14  trial on question of damages.  Any device designed to

15  circumvent that right is simply improper.

16        And what's more, the only law cited in plaintiffs'

17  motion concerns a completely different circumstance, as I

18  understand it.  It concerns a situation where a damages award

19  has been determined and a Special Master is simply determining

11:22 20  how to divide up the money among putative class members.  It's

21  not at all what's happening here.  But for all these things, we

22  think the motion is improper but really --

23        THE COURT:  All right.  Miss Liss-Riordan, why isn't

24  Mr. Knopp correct, that even if I were to appoint a Special

25  Master, he still would have his right preserved to a jury

trial?  In other words, the Master would present a report and recommendation, which presumably would be submitted to the jury, and they could take it as part of the evidence that they have to determine.

But it doesn't seem to me that Federal Rule of -- Civil Rule 53(a)(1)(B)(ii) denies the defendant a right to a jury determination of this issue, albeit it may be supplemented by a Master going through the process of determining what he thinks the damages should be.

MS. LISS-RIORDAN:  Well, your Honor, we understand Starbucks' argument really to be that because a damages calculation needs to be made here and because they don't agree with our damages calculation, we have a fact issue, and thus it has to be determined by a jury.

They've attempted to poke holes, as we've explained in our briefing at the way we calculated it.  The fact that Mr. Ossoff, at my direction, inserted average tip rates for the weeks where the data was missing, they argue it raises factual issues as to whether it was proper to do that, but they haven't created any real issues of fact.

So, I mean, it does tie in with what we presented in our summary judgment motion.  I understand your Honor has ruled on that.  But the reason that it appears that a Special Master would be appropriate to determine damages in this situation is because there really just aren't issues of fact.  They're not

1   saying that we calculated it wrong and we're off by a million

2   dollars or so here.  They're making the legal argument that

3   because their evidence is not statistically representative --

4        THE COURT:  As I quickly have been able to go behind

5   your motion that I just got this morning, it does seem to me

6   that that rule authorizes a district court to appoint a Special

7   Master to "resolve a difficult computation of damages" even

8   where, as here, an opposing party objects to that.  The process

9   of presenting the Master's findings to the jury as evidence

11:25 10   would, however, preserve the parties' right to a jury trial,

11   and the Master's findings on jury issues are not binding unless

12   the parties stipulate thereby waiving their right to a trial by

13   jury.

14        So if I were to appoint a Master, it would just be

15   adding an another layer on top of what we have already to

16   determine.  A jury has got to determine this question of

17   damages even if I appoint a Special Master under 53, the way I

18   read it.

19        MS. LISS-RIORDAN:  Well, I think it's still something

11:26 20   that the Court should consider because I think having a Master

21   hear this prior to us convening a jury, picking a jury, doing

22   all of the things that are going to happen over the next few

23   days, there would at least be some preliminary way of sorting

24   through the legal argument and the factual argument.

25        And given that we have this detailed computation to

1    make, which we're prepared to explain to a jury.  It just --

2    it's the type of assessment that I think is typically not done

3    before a jury.  It's more typically done at a bench trial.

4         THE COURT:  There's not much typical about this case.

5    I'll give you that.

6         MS. LISS-RIORDAN:  Yes.

7         THE COURT:  It boggles the mind as to why this matter

8    is where it is now.  But having mulled it for a considerable

9    period of time, it does seem to me that Mr. Knopp's contention

11:27 10  that his client is entitled to a jury determination of the

11   amount of damages, notwithstanding the fact that liability has

12   been found, is appropriate.

13        It is also subject to careful circumscription by this

14   Court so that we don't get back into an argument about the

15   fairness or the lack of fairness of the tip policy of the

16   defendant.  That is not going to go to the jury, and I am going

17   to be carefully aware during the course of this jury trial, if

18   we get there, that that is the issue and that we are going to

19   talk about the method of determining damages.

11:28 20       The plaintiff has their method that I think I

21   understand, although I do want to question you a little bit

22   about that just for my own edification.  And then the

23   defendants presumably can cross-examine your witness and try to

24   poke holes in his methodology and present to the Court or to

25   the jury some contrary method of determining what the damages

1   are in this case.  But that is the issue.

2            MS. LISS-RIORDAN:  Well, actually, that is one point

3   that I want to make, is that the defendant, in response to our

4   motion for summary judgment, did not come forward with their

5   own calculation of damages.  So we don't believe they should be

6   allowed to, (a), present it for the first time at trial.  It's

7   well-settled procedure that when a party files a motion for

8   summary judgment, the opposing party must come forth with their

9   disputes of fact in response to it.

11:29 10            So given that Starbucks hasn't yet said, no, this

11   isn't how you should calculate it, you should calculate it this

12   way, other than making their conclusion that the imputed tip

13   rate should be used because the actual tip records are not

14   statistically representative.  They haven't done their own

15   analysis like our Exhibit 2 spreadsheet to say, Actually, you

16   should use these average rates instead of, and you would then

17   come to an amount less than we came to.  I would strongly

18   object if Starbucks is allowed to make some presentation like

19   that for the first time at trial.  And they haven't done it

11:29 20   yet; and since they haven't, we say they haven't --

21            THE COURT:  I'll reserve that question.  But while

22   you're on your feet, maybe you can help me as to understanding

23   the method that you used.  And I understand you only had a

24   sampling of the stores, something like 47 out of the

25   150-some-odd stores.

1          MS. LISS-RIORDAN:  Right.

2          THE COURT:  But why isn't the simplest and most direct

3     way to determine what your alleged damages are is to add up all

4     of the tips that were collected in the baskets, or wherever

5     they were collected, in the course of, let's say, a year at

6     Store A and divide then -- that figure comes to X thousands of

7     dollars -- and then divide that number by the number of hours

8     worked by both barristers and shift supervisors.

9          That then gives you a rate, an annual tip rate.  And

11:30 10    then you simply multiply the number of hours that were worked

11    by the shift supervisors by that rate, and you get a figure,

12    which is one-tenth or one-fifth of the total amount of tips

13    that were collected during that year.  And then that forms the

14    basis for some sort of an extrapolation that I assume your

15    witness is going to try to make on the basis of one store times

16    152.  Isn't that the simplest way to do it?

17         MS. LISS-RIORDAN:  Well, your Honor, that is one way

18    to do it.  The way we did it was that we were trying to use all

19    of the usable data they produced.  Rather than taking a sample

11:31 20    or picking one store, we used everything that was identifiable

21    from their records.

22         Another way to do it, in more simple format, similar

23    to what you've just described and actually what the court in

24    California ended up doing, was you could look at the global tip

25    rate.  If you look at the average of all the tip records that

1    they produced, both parties agree it comes to just under $2 an

2    hour.

3         You could take the total number of shift supervisor

4    hours worked during the class period, which their expert in his

5    report calculated to be just over five million hours.  And you

6    multiple those, and you come to ten-million-something dollars,

7    which is very close to what we came to, trying to do a more

8    precise calculation using all the usable data.

9         I mean, that's why I'm saying it really is a

11:32 10  ministerial mathematical-type calculation.  Whether you choose

11   to do it the way you've presented, where you take one store and

12   extrapolate to 154 stores.  You use our method, which was

13   trying to maximize the data -- the use of the data we had,

14   which is take it all, extrapolate it out to stores and

15   extrapolate out to the stores you don't have data for.  That's

16   another way.  Or just take the general average and multiply it

17   by the total number of hours.  Those are different ways to get

18   there, and I think they all come within the same very narrow

19   range.

11:32 20       So, again, my concerns are -- and I'm sure that the

21   Court is going to strongly limit Starbucks in the way it

22   presents argument to the jury so that it is circumscribed to

23   the relevant issue of damages.  But given that the disputed

24   issue comes within such a narrow range, that's another reason

25   why it appears to us that a Special Master making this

1   determination or the Court, through an assessment hearing,

2   could make this determination.

3        By bringing a jury in, even if Starbucks is cautioned

4   not to make arguments about fairness, it's hard to imagine that

5   fairness concerns aren't going to somehow seep into the trial

6   inappropriately.  And that's another reason why we're --

7        THE COURT:  That may be true, Miss Liss-Riordan, but I

8   don't see that any case that you cited to me has indicated that

9   I can take away from the defendants their right to a jury

11:33 10   determining the amount of damages that they owe.

11        MS. LISS-RIORDAN:  Right.  I absolutely agree with

12   that proposition.

13        THE COURT:  If that's the case, if that's the bottom

14   line, if we go through some sort of a preliminary person making

15   this determination, that person is just simply going to have to

16   present their evidence to the jury, and the jury can factor

17   that in.  It just seems to me to add another layer on top of

18   something that's already complicated.

19        MS. LISS-RIORDAN:  Right, right.  What I was about to

11:34 20   say is that I absolutely agree with what you just said had

21   Starbucks raised a genuine issue of disputed fact.  We just

22   submit that they haven't.  But we understand and respect your

23   ruling.

24        THE COURT:  Mr. Knopp, in response to Miss

25   Liss-Riordan.  Why should you be allowed at this stage to

1    present some alternative method to the jury in determining

2    damages?  That's what this trial is going to be about:

3    damages, not liability.

4           MR. KNOPP:  We understand that, your Honor.  It's the

5    plaintiffs' burden to prove damages.  We have no obligation --

6    if we choose to present any alternative, that's a strategic

7    decision we may or may not make.  It's not our obligation to

8    present an alternative, let alone at summary judgment.  We are

9    in no way limited to the evidence we presented to oppose

11:35 10   summary judgment.  There's no law suggesting that that is so.

11   It's their obligation to prove damages on a class-wide basis,

12   and we are entitled to present evidence that they haven't

13   attempted to do that, that they haven't accomplished that.  And

14   the jury very well may agree.  And we're in no way limited to

15   what was presented at summary judgment or to some alternative

16   that they agree is valid.  There are no such limitations in the

17   law.

18           I would also add that plaintiffs' last-minute request

19   for a Special Master is fundamentally at odds with what they

11:35 20   intend to do in the jury trial.  It's their view that a

21   paralegal with no qualifications whatsoever can easily

22   summarize some documents and do some extrapolations and make

23   some assumptions and say $11 million.  That's their view, that

24   that can be done by a paralegal who's not remotely qualified to

25   make these sort of statistical assumptions that he's making.

1   If that can be done by a paralegal, then we submit that there's

2   -- that their request for a Special Master is really at odds

3   with what they intend to do.

4        If I may, I'd like to explain a little bit of our view

5   of what their spreadsheet is because it's been presented to the

6   Court as a summary of documents that have been reviewed.  In

7   fact, it is fraught with assumptions, inferences,

8   extrapolations and argument.  If I may, I'll just present a few

9   examples of what I mean by that.  So the plaintiffs say this

11:36 10   spreadsheet calculates close to $11 million in tips left in

11   Starbucks' stores over a six-year period.  So that's about $2

12   million a year, a little bit less.

13        So, for example, the spreadsheet and this paralegal

14   are going to testify that there was $2 million left in tips in

15   2005 based on documents they reviewed.  They reviewed zero

16   documents from 2005.  Nevertheless, they have a spreadsheet --

17        THE COURT:  Who had control of the documents, Mr.

18   Knopp?

19        MR. KNOPP:  Your Honor, it is simply false to suggest

11:37 20   that these paper documents are the only evidence.  Starbucks

21   had a policy that instructed the employees to report to the

22   company electronically, using the store computer, any tips

23   received in a week in excess of 50 cents.  That, too, is

24   evidence of the amount of tips.  It's evidence the plaintiffs'

25   paralegal chose to disregard.  And they can argue about what is

1    the better evidence, and the jury can decide that, but that is

2    argument.

3          And by selectively basing a spreadsheet on collective

4    evidence that is populated week by week, not by information

5    that came from documents but by assumptions.  I can show the

6    Court an example.

7          THE COURT:  So let me see if I understand.  Your

8    defense is going to be that since there was a policy that all

9    -- who is this?  Shift supervisors were --

11:38 10          MR. KNOPP:  And barristers.

11          THE COURT:  And barristers, were required to report

12    any tips received over 50 cents per hour; and if they didn't

13    report it, the assumption could be made that they received 50

14    cents or less?

15          MR. KNOPP:  Well, your Honor, that's part of our

16    defense.  But another part of our defense is that the documents

17    the plaintiffs are relying on, the electronic records I just

18    described, those are the only Starbucks records of the amount

19    of tips.  These other documents are not company documents.

11:39 20    They're documents that the class members created.  They're

21    completely haphazard, and, most significantly, they don't exist

22    for 95 percent of the store weeks at issue.

23          As a result of that -- here's an example of the

24    spreadsheet where it's one store in particular where the

25    plaintiffs' paralegal says there was $42,000 left in tips over

1    six years.  That is based on one piece of paper for one week.

2    For the other 300-some weeks in that period in this store,

3    they're just assuming that the same tip rate from the one week

4    applies throughout.

5         If that is not argument and speculation and

6    extrapolation, we don't know what that is.  That is not

7    summary.  That is not summary of evidence, which is all Rule

8    1006 permits.  That is -- and what's more, not only is he going

9    well beyond in this document -- this is their Exhibit 2.  Not

11:40 10   only is he going well beyond, I submit, 95 percent beyond,

11   summarizing what's actually in the documents that they say

12   matter, not only that, but he could only do so.  He could only

13   take this very limited information and say, I think this

14   information in this store about the tips left there allows me

15   to predict the tip rates in other stores and in another weeks.

16   He could only do that, our expert has testified, if the

17   information he had was a representative sample.

18        Your Honor, only an expert can do that.  Only an

19   expert can draw conclusions based on evidence about which he

11:41 20   has no personal knowledge and based on statistical

21   calculations, which he's not qualified to make.  Only an expert

22   can do that.  I would direct the Court's attention to the First

23   Circuit decision in the Walton case cited in our motion in

24   limine.  It's exactly on point, your Honor.  In Walton, Walton

25   involved a company who was making a claim that an individual

1    had violated a noncompete agreement.  And the company said, as

2    a result of this, we lost a lot of profits.

3         So the company called one of its managers to testify

4    about the profits lost.  The manager, who was a lay witness,

5    not an expert like here, the manager reviewed some financial

6    records for one year and then testified that based on his

7    review of those records the lost profits in other years are

8    whatever they were.  So he testified from the information he

9    had and extrapolated it.

11:42 10        The district court held that -- excluded that

11   testimony, and the First Circuit affirmed that for two reasons

12   that are equally applicable here.  First, the court said, this

13   witness has no personal knowledge of the data he reviewed.

14   Same here.  Mr. Ossoff, the paralegal, has no personal

15   knowledge.  He admitted as much at deposition, but it couldn't

16   be disputed.  No personal knowledge about the tips left or the

17   documents.

18        THE COURT:  Let me cut to the chase, Mr. Knopp.  How

19   is this Court to determine the amount of damages that the

11:42 20   plaintiffs are entitled to?

21        MR. KNOPP:  Well, respectfully, your Honor, it isn't.

22   The jury is to do that.

23        THE COURT:  "This Court," meaning the Court and the

24   finder of fact that it selects.

25        MR. KNOPP:  Thank you, your Honor.  Well, it's very

1   similar, your Honor.  It's no different than any trial on any

2   subject, we submit.  There's a party who has a burden of proof.

3   That's the plaintiffs here.  They have to carry that burden.

4   They need to convince the jury that they've done that with the

5   admissible evidence.  We submit that this is not admissible

6   evidence.  It's not a summary of any sort.  It's basically the

7   lawyer's argument presented by the lawyer's employee.  It's

8   argument.

9           THE COURT:  And, therefore, the plaintiff should

11:43 10   simply get up and say to the jury, Look, just do the best you

11   can.  We don't have any evidence of exactly how many tips were

12   left over this six-year period in 154 stores.  Just do the best

13   you can.  Is that what they should do?

14           MR. KNOPP:  Well, your Honor, we believe there is

15   other evidence and the jury will hear other evidence about the

16   amount of tips.  But --

17           THE COURT:  Is the defendant going to offer it?

18           MR. KNOPP:  Possibly, your Honor, depending on what

19   the plaintiffs do to carry their burden.  We may.

11:43 20           But, your Honor, beyond that, how we got to this

21   point, the plaintiffs made some choices.  The Court set a

22   deadline for expert discovery.  There was discussion before

23   your Honor about whether the plaintiffs would, in fact,

24   designate an expert or not.  They know full well -- they keep

25   citing this Chau case in California where we represented

1    Starbucks.  They cite what the trial court did.  Of course, the

2    trial court's decision granting damages to the barristers was

3    overturned in full, so that's not for anything.  They know full

4    well the plaintiffs in that case used an expert, more than one,

5    in fact.

6         So they've made a decision.  It's simply not Starbucks

7    fault that they've elected to proceed in a way that we believe

8    cannot support a class-wide finding of damages.  If they're now

9    to a point where they've got no alternative, well, your Honor,

11:45 10   we submit that it's simply not our fault.

11        THE COURT:  Okay.  You'll agree that they have some

12   evidence of tips being left at some Starbucks stores, correct?

13        MR. KNOPP:  We agree that the documents that they say

14   are admissible -- and we dispute that.  But if those documents

15   are entered into evidence, that is some evidence, yes.

16        THE COURT:  And that evidence was produced by your

17   client in response to discovery motions?

18        MR. KNOPP:  It was, your Honor.  We did satisfy our

19   discovery obligations.  However, the First Circuit case that we

11:45 20   cited, the case law that we cited from the First Circuit --

21   they have not cited any countervailing law from the First

22   Circuit -- makes it clear that the mere act of producing

23   documents does not authenticate the records.

24        THE COURT:  Okay.  I'm going to let this case go to

25   the jury, Mr. Knopp.  We're going to impanel a jury next Monday

1    morning at 9 a.m., and we're going to go forward day to day --

2    I mean, Tuesday.  Yes, I'm corrected.  This is a long weekend.

3    So it won't be Monday.  It will be Tuesday.  We're going to go

4    forward day to day, and the case is going to be completed --

5    and I'm going to tell the jury that it's going to be completed

6    next week.

7         I'm going to limit you to time.  I'm going to limit

8    the plaintiffs and the defendants to the same amount of time.

9    Time counts against while you're on direct examination or

11:46 10   cross-examination, and I'll keep track of that.  We will go

11   from day to day.  It doesn't make a lot of sense to me to

12   proceed this way.  I think this case should be resolved by you

13   sitting down and trying to work out a fair settlement of the

14   case, but in default of that, we're going to have a jury trial.

15        MR. KNOPP:  Thank you, your Honor.  And the parties

16   have attempted to resolve their differences.  We will continue

17   to do so.  May I ask one point of clarification --

18        THE COURT:  Yes.

19        MR. KNOPP:  -- regarding the scope of the trial?  The

11:47 20   plaintiffs, in their complaint, pled a claim for injunctive

21   relief, which, if that's still a live claim that they're

22   pursuing, we believe it impacts the evidence that may be

23   presented at trial.  While that ultimately is an issue for the

24   Court to decide, it's an issue that must be resolved based on

25   evidence presented at trial.  If the plaintiffs have withdrawn

1    that claim, we'd like to know that.

2          THE COURT:  Miss Liss-Riordan, what about the

3    injunctive relief requested?

4          MS. LISS-RIORDAN:  Right.  The injunction, as Mr.

5    Knopp just stated, is for the Court to decide, and it's

6    typically decided after the trial.  It's not appropriate for

7    that to be put to the jury.  It's not an issue for the jury.

8    It will be an issue for the Court to determine whether or not

9    Starbucks should, upon judgment, be ordered to comply with the

11:47 10    law going forward because they are still in violation of the

11   Court's order.  They have not changed their policy.  We don't

12   see any of this as relevant for the jury.

13         THE COURT:  We will cross that bridge when we get to

14   it, right?

15         MR. KNOPP:  That's right, your Honor, but -- I

16   apologize to belabor this.  But the parties agree that the

17   Court decides whether an injunction is appropriate, but it does

18   so based on trial evidence.  So if that's a claim that the

19   plaintiffs are pursuing, it does impact the trial.  It's a form

11:48 20   of equitable relief and concerns of fairness are paramount.

21   And so we understand from --

22         THE COURT:  Why is it dependent on what's presented at

23   trial because I've already decided, as a matter of summary

24   judgment, that liability has been established?

25         MR. KNOPP:  Understood, your Honor.  But the standard

1    for whether injunctive relief is proper is completely

2    different.  You don't get an injunction just because you

3    violated the law.

4         THE COURT:  All right.  They have to start anew and

5    prove to me that there's a substantially likelihood of success

6    in going forward?

7         MR. KNOPP:  No, your Honor.  It's really the equitable

8    factors that are different from the liability determination,

9    and those include essentially the concerns of the people who

11:49 10   are impacted by the injunction, such as the shift supervisor.

11        THE COURT:  I'm not fully following your gist.  And if

12   you think that there's something that I have to do at this

13   trial with respect to post-trial injunctive relief requests,

14   then you should put it in writing to me before we get to next

15   Monday morning -- next Tuesday morning.

16        MR. KNOPP:  I believe we did address this in one of

17   our briefs.  I believe it was the opposition to plaintiffs'

18   motion in limine.  We have a section in there about, if they

19   are seeking injunctive relief, the issues under which we're

11:49 20   entitled to present evidence.  So I believe in that brief

21   there's a short section on that.

22        But, again, we believe the plaintiffs are trying to

23   have it both ways, that we can't present evidence on this very

24   significant issue to Starbucks.  We can't present evidence on

25   it at trial, but yet they're not dropping the claim.  We think

1    it has to be one or the other.  If they're pursuing the claim,

2    we're allowed --

3          THE COURT:  Miss Liss-Riordan, I'll give you the last

4    word on that.

5          MS. LISS-RIORDAN:  Yes, your Honor.  What Starbucks is

6    doing, what they're admittedly doing, is they want to be able

7    to put the injunctive evidence in at the trial, again to

8    influence the jury about the fairness issue, which is not

9    proper.

11:50 10        Now, I disagree with the way they're stating what the

11   standard is for equitable relief, but we are in agreement it's

12   for the Court to decide after trial.  If your Honor believes

13   after the trial that you need some additional information or

14   even testimony in making your decision as to whether or not to

15   enter an injunction, the proper course would be, as trials are

16   often bifurcated, with one part limited to the jury and the

17   other part, if it's the Court decision, the Court alone can

18   hear evidence.

19        If you felt there was anything additional that needed

11:51 20   to be considered, it could be considered after the verdict and

21   presented to you alone.  This should not be an opportunity for

22   Starbucks to once again bootstrap into their presentation to

23   the jury the fairness issue in order to impact the jury's

24   resolution on damages.

25        THE COURT:  I agree with that, Mr. Knopp.  You're not

1    going to be allowed to make an end run, if you will, and get in

2    those issues before the jury.  This trial is going to be

3    strictly limited to what the appropriate measure of damages are

4    in this case.

5             MR. KNOPP:  Understood.

6             THE COURT:  We will cross the bridge of injunctive

7    relief at a later time.

8             MR. KNOPP:  Would there be a second trial?

9             THE COURT:  There may well be.

11:51 10       MR. KNOPP:  Okay.  I apologize for belaboring this,

11   but many of our witnesses will be the same witnesses in both

12   trials.

13            THE COURT:  Well, that will be a problem to be

14   resolved later.  We're not going to try that case next week.

15   Next week is damages.

16            MR. KNOPP:  Thank you, your Honor.

17            THE COURT:  Now, just in terms of logistics, I have

18   not apparently received information with respect to proposed

19   voir dire questions of the jury.

11:52 20       MS. LISS-RIORDAN:  Yes.  We did submit --

21            THE COURT:  But I haven't gotten them from the

22   defendants.

23            MR. KNOPP:  Yes.  We did file them yesterday.

24            THE COURT:  Okay.  Maybe they came in and I don't have

25   them.  All right.

1          MS. LISS-RIORDAN:  Your Honor, I have one additional

2     one in addition to the one that I proposed last night.  I'd

3     like you to ask the jury panel what background or training they

4     have in math and/or statistics.

5          THE COURT:  Well, all right.  I'll take that under

6     advisement.

7          Okay.  I need also -- I'm not going to allow the

8     defendants to call 34 witnesses.  Obviously, they don't have

9     time to call 34 witnesses.  But to the extent that there are

11:52 10    any witnesses that you do feel that you're going to call,

11    having heard my limitations, I need to know the places of

12    residences of those witnesses so that when I advise the jury

13    panel at the beginning of the case, I can say, John Smith from

14    Los Angeles as opposed to John Smith from Boston, okay?

15         MR. KNOPP:  Thank you, your Honor.

16         MS. LISS-RIORDAN:  Your Honor.

17         THE COURT:  I'll need that by no later than, say, noon

18    tomorrow so that I can prepare.

19         MS. LISS-RIORDAN:  Yes.  And, your Honor, given that

11:53 20    Starbucks has submitted what's clearly an overbroad witness

21    list, and particularly in light of your limitations, I think it

22    would be proper and fair if Starbucks would actually identify

23    for us by tomorrow which witnesses they actually plan to call

24    because, otherwise, this is a little bit trial by surprise for

25    us.

1          THE COURT:  Mr. Knopp?

2          MR. KNOPP:  Your Honor, we'll do everything we can.

3     Part of the reason the list is overbroad --

4          THE COURT:  Well, you'll give Miss Liss-Riordan at

5     least those witnesses you know you're going to call.  I presume

6     you're going to have an expert or whatever.  Of course, you're

7     not obligated to call any witnesses.  I understand that.  But

8     you should let her know because this is going to be -- you

9     know, the next business day after tomorrow will be the first

11:54 10    trial day -- who you expect to call as your witnesses so that

11    she can prepare to cross-examine them.

12         MR. KNOPP:  Your Honor, can Starbucks request a

13    similar instruction from plaintiffs?

14         THE COURT:  Of course.  The plaintiffs need to give

15    that list to the defendants.  Actually, tell the Court who's

16    going to be your first witness.  Is it going to be Mr. -- the

17    paralegal?

18         MS. LISS-RIORDAN:  It may well be, yes.

19         THE COURT:  All right.  You decide that and let the

11:54 20    defendants know before Monday morning.

21         MS. LISS-RIORDAN:  Yes.

22         THE COURT:  Tuesday morning.  I keep making that

23    mistake.

24         All right.  Then in terms of housekeeping matters, I

25    believe Miss Liss-Riordan has empanelled a jury before me, but

1    I don't believe you have, Mr. Knopp, or any of your

2    compatriots.  The way I do it -- this will be a civil trial.  I

3    will impanel probably 12 jurors.  I may decide on 10.  But no

4    matter what, there are no alternates in a civil trial.  If we

5    lose one or more jurors during the course of the case, we go

6    forward with the 11 or 10 or however many are left over.

7         Assuming that we're going to impanel 12 jurors, I ask

8    the questions of the panel from the back of the courtroom any

9    -- and I say, "If your answer is yes or if you think your

11:55 10    answer might be yes to any of my questions, please raise your

11    hand.  We'll take down your name and the number of the question

12    that you responded to affirmatively."

13         Then when and if that potential juror is seated in the

14    jury box when the deputy calls the list at random, I will call

15    all of those who have answered questions affirmatively

16    individually to sidebar where I will inquire about those

17    affirmative responses and allow counsel -- one counsel per

18    side, I might add -- to inquire of those potential jurors.  I

19    reserve the right to instruct a potential juror not to answer

11:56 20    if I think the question is going beyond discovering whether

21    there are reasons to excuse that juror for sound reasons.

22         But if they're excused, of course, then we refill the

23    box.  When I have a so-called clean slate in the jury box, I

24    will then inquire orally of each of the potential jurors what

25    they do for a living and, if they're married, what their spouse

1    does.  That is by way of supplementation to the information

2    that we get in writing, which is sometimes very sparse as to

3    what they do.

4         Then we will go to sidebar and proceed with peremptory

5    challenges.  Each side will get six, that is, one for every two

6    jurors.  We exercise them seriatim as they say.  In other

7    words, if Miss Liss-Riordan has a challenge in the first round,

8    she'll exercise it.  Then we go to the defendants.  They'll

9    exercise one if they have one, back and forth until both sides

11:57 10  are satisfied, understanding that there are no back strikes.

11   If you don't strike someone in the first round, you can't

12   strike that juror in a later round.  You can use all or none of

13   your peremptories in that first round, just understanding that

14   anybody that's left or anyone that wasn't challenged in that

15   round can't be challenged in a subsequent round.

16        Is it clear how I do that?

17        MR. KNOPP:  Yes, your Honor.

18        THE COURT:  Then in terms of openings, how long do you

19   expect to need to open, Miss Liss-Riordan?

11:57 20        MS. LISS-RIORDAN:  I don't know what your standard is.

21   Fifteen, twenty minutes.

22        THE COURT:  Fifteen is fine in a case like this.

23   Defendants?

24        MR. KNOPP:  Fifteen to twenty-five minutes.

25        THE COURT:  No more than twenty.  Twenty will be a

1    maximum.

2         And those openings can be made from the well, from

3    where you're sitting, or using this stand here.  But I do not

4    allow wandering during either your openings or examination of

5    witnesses.  You can examine from counsel table, or we have

6    found it is preferable if you use that stand back there because

7    then, when we turn it toward the witness box, it means the

8    witness has to project his or her voice across the room.  If

9    Miss Liss-Riordan were to inquire from counsel table, the

11:58 10   witness tends to talk to you and forget that the jury is

11   another 20 feet away.  If you only have one or two questions

12   and you want to examine from counsel table, that's fine.  I

13   just don't want you wandering around during the openings or

14   during the examination.

15        I believe -- and during your openings, if you want to

16   use a podium, you can put it out there but not closer than ten

17   feet to the jury box.  I don't want you approaching closer than

18   ten feet to the jury box.

19        If you have any chalks or whatever that you want to

11:58 20   use during your opening, they should be cleared with opposing

21   counsel and a copy provided to the Court so I can see it,

22   understanding, again, that if you use any podiums or you need

23   to display something that's large, I cannot be sighted from

24   anyone in the courtroom.  So be sure when you put it here that

25   I can see all the lawyers and I can see everybody in the

1    gallery.  Okay?

2         Anything else that I haven't covered that I perhaps

3    forgot, Miss Liss-Riordan?

4         MS. LISS-RIORDAN:  Your Honor, plaintiffs have a

5    request.  It was mentioned in our voir dire -- proposed voir

6    dire questions that were filed last night.  We would request

7    that you deliver a precharge to the jury summarizing what this

8    is about because I believe that unless the jury knows from the

9    beginning that this case is about calculating damages, there's

11:59 10   a likelihood of confusion.

11        In fact, I would request that you consider giving a

12   precharge or some version of the introductory jury instruction

13   we proposed even prior to jury impanelment so that we can find

14   out during the process of questioning prospective jurors if

15   anyone has any strong opinions or feelings about this, which I

16   expect may happen.

17        THE COURT:  I haven't looked at your voir dire since

18   you got it to me just recently.  I am disinclined to give any

19   instruction before I impanel.  I always give preliminary

12:00 20  instructions after the impanelment, and I will look at any

21   proposal that you want to make at least in the middle of the

22   sandwich.  I have boilerplate that I give each time.

23        If there's something particularly that you want me to

24   tell the jury at the outset as opposed to in my charge at the

25   end, then highlight that or tell me about it.  I don't know if

1    you've done it here.

2              MS. LISS-RIORDAN:  Yes.

3              THE COURT:  But if you haven't, do it between now and

4    noon tomorrow so I can have an opportunity to look at it.

5              I am not generally inclined to give detailed

6    instructions.  I leave that for openings and closing arguments,

7    and then I always have the last word because I charge after the

8    closing arguments.  But if there's some good reason why I

9    should say a particular thing about this case either during

12:01 10   impanelment or post-impanelment, then you let me know.  I don't

11   know if you've done that here, but, if not, then do it by noon

12   tomorrow.

13             MS. LISS-RIORDAN:  Yes.  I have done it, your Honor.

14   It's Proposed Instruction 1 from the plaintiffs.  It's just our

15   introduction to the case.  And we would ask in particular that

16   you let the jury know the Court's made its ruling on liability

17   and it's strict liability law, which is why that issue is not

18   before them.

19             THE COURT:  I'll look at it.  Anything else?

12:01 20         MR. KNOPP:  Your Honor, we intend to submit our own,

21   but other than that --

22             THE COURT:  Your own voir dire?

23             MR. KNOPP:  Our own proposed neutral statement of the

24   evidence.

25             THE COURT:  Do it by no later than noon tomorrow.

1          MR. KNOPP:  Yes, your Honor.

2          THE COURT:  Anything else that needs to come to my

3     attention before we adjourn?

4          MR. KNOPP:  Not from Starbucks.

5          THE COURT:  Or for the plaintiffs, Miss Liss-Riordan?

6          MS. LISS-RIORDAN:  Not at the moment.

7          THE COURT:  We're adjourned.  We'll see you at 9:00 on

8     Tuesday.  We don't know what order we will be impaneling in,

9     but I want you available as early as 9:00.  It's likely we

12:02 10    probably won't be reached until 9:30 or 10 depending on what

11    order we are to impanel.  I want you here in case there are

12    some last-minute matters we need to discuss.  We're adjourned.

13    (Whereupon, at 12:02 p.m. the hearing concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T E

2

3

4          I certify that the foregoing is a correct transcript

5     of the record of proceedings in the above-entitled matter to

6     the best of my skill and ability.

7

8

9

10

11

12    /s/Cheryl Dahlstrom          01/12/2012

13    Cheryl Dahlstrom, RMR, CRR        Dated

14    Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25